UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| RITA LAMBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-1632-GMB |
| | ) | |
| ANDREW M. SAUL,[1] Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On April 16, 2015, Plaintiff Rita Lambert filed an application for disability insurance benefits and supplemental security income. Her alleged disability onset date is March 31, 2015. Lambert's applications for benefits were denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on June 21, 2017, and he denied Lambert's claims on November 15, 2017. Lambert requested a review of the ALJ's decision by the Appeals Council, which declined review on August 18, 2018. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of August 18, 2018.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Saul is substituted for Nancy Berryhill as the proper defendant in this case.

Lambert's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be AFFIRMED.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Taylor bears the burden of proving that he is disabled, and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

    (1) Is the claimant presently unable to engage in substantial gainful activity?
    (2) Are the claimant's impairments severe?
    (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
    (4) Is the claimant unable to perform her former occupation?
    (5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  FACTUAL BACKGROUND

Lambert was 51 years old at the time of the ALJ's decision. R. 47. She lives in Attalla, Alabama with her son, daughter-in-law, and grandson. R. 46 & 51. Lambert's primary complaints are diabetes, high blood pressure, neck pain, low back pain, and neuropathy. R. 49. She also complains of torn ligaments in her right knee, edema, depression, anxiety, panic attacks, and migraines. R. 49. In her disability report, Lambert alleged that diabetes, high blood pressure, anxiety, depression, sciatic nerve, a bulging disk, neuropathy, swollen feet, and migraines prevent her from working. R. 276. She also had an abusive spouse for approximately 13 years (R. 669), and she has been battling depression for quite some time. R. 694. Lambert struggles to pay for the medications required to treat her conditions. R. 57 & 668.

Lambert obtained her high school diploma. R. 47. In the past, she held a

variety of employment positions. She was a legal secretary for Carnes and Carnes Attorneys in 2004. R. 49. She worked as a convenience store cashier in 2007. R. 48–49. She did data processing for Mitchell Grocery Corporation from 2008 until 2012. R. 48 & 263. She also held a data processing position with Subway in 2008 and 2009. R. 263. In 2014, Lambert was self-employed as a babysitter. R. 47. She also ran errands for others. R. 47. In 2015, she worked for a few days at a deli. R. 47. She worked at Murphy Oil for a month and a half in 2016. R. 47.

Lambert submitted a number of medical records to the ALJ to support her claim of disability, including the report of licensed psychologist June Nichols. R. 668. Disability determination services referred Lambert to Nichols for mental examination. R. 668. During the examination, Lambert told Nichols about her past work, but failed to mention that she was currently working as a babysitter and errand-runner. R. 669. Ultimately, Nichols determined that Lambert's severe depression and anxiety could compromise her ability to complete everyday work. R. 671. The ALJ assigned little weight to this opinion for the following reasons:

> Dr. Nichols, a one-time consultative psychological examiner, reviewing the claimant's record and directly evaluated the claimant. Dr. Nichols' prognosis was guarded due to the claimant's use of medication without a significant reduction in symptoms. She noted that the claimant would benefit from counseling. Dr. Nichols expressed that the claimant had symptoms from severe depression and anxiety. She opined that the claimant's ability to relate interpersonally and withstand the pressures of work were compromised by her symptomatology. Dr. Nichols opined that the claimant had mild deficits that could interfere with her ability to remember, understand, and carry out work related

6

instructions. She opined that the claimant's anxiety and panic attacks markedly interfered with her concentration, persistence, or pace. Dr. Nichols noted that the claimant has a global assessment functioning score of 50, which indicated serious symptoms. The undersigned notes that the claimant failed to report recent self-employment activity to Dr. Nichols indicating a higher level of functioning than had been reported during the examination. Dr. Nichols' opinion is inconsistent with the record as a whole, and therefore the undersigned has afforded Dr. Nichols' opinion little weight.

R. 18.

The ALJ held a hearing in Lambert's case on June 21, 2017. R. 45. At the hearing, Lambert testified that back and neck pain, migraines, and a torn ligament, among other things, prevented her from working. R 49. She described the pain as constant. R. 56. On a pain scale from one to ten, she said that her pain was at a level seven or eight. R. 56. Lambert explained that she must spend 75% of the day laying in bed because of pain. R. 51 & 57. If she does not lie down, the pain she experiences is constant. R. 55. She also relayed that the pain prevents her from propping her arm up on the desk for a long time, from raising her right arm, and from walking without issue. R. 55. She cannot walk a city block without experiencing pain. R. 56. She can stand for only 20 to 25 minutes without needing to sit down. R. 55. And when she is seated, her feet swell and the experiences pain in her legs and hips. R. 56. The last time Lambert attempted to work, she had to quit her job because the pain prevented her from sitting for the required amount of time. R. 58. She also had to stay in bed until she went to work because her body hurt all of the time. R. 58.

Occasionally the pain was so bad that she had to miss work because she could not walk or get out of the bed. R. 58. Lambert testified that she took the medications Lantus, Novolog, Ibuprofen, Tylenol, Neurontin, Celexa, and Trazodone for her health problems. R. 50–51.

During the hearing, the ALJ posed the following hypothetical to a vocational expert ("VE"):

> I'd like you to assume a hypothetical person the same age, same education, same past work as the claimant. Further assume this person is limited to light,[2] unskilled work not requiring complex instructions or procedures, but no climbing of ropes, ladders or scaffolds, no work at unprotected heights and hazardous machinery, no more than occasional stooping, crouching, crawling or kneeling, no more than frequent overhead reaching bilaterally, no more than occasional climbing of ramps or stairs, no more than frequent interaction with coworkers and supervisors, occasional contact with the general public.

R. 62. The VE responded that this hypothetical individual could work as an assembler, a hand packager, and a folder of laundry. R. 62. The ALJ then asked whether the hypothetical individual could find employment if limited to sedentary,[3]

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[3] Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

unskilled work. R. 63.  The VE testified that no jobs exist that this individual could perform. R. 63.  The VE also determined that if individual in the first scenario would not be able to find work if she had to lie down for two or more hours during the workday. R. 63.  Finally, the VE reported that the hypothetical individual could not find work if she was required to miss three or more days per month due to a chronic medical condition. R. 63.

The ALJ issued his decision on November 15, 2017. R. 21.  Under step one of the five-step evaluation process, the ALJ found that Lambert has not engaged in substantial gainful activity since March 31, 2015. R. 12.  The ALJ concluded that Lambert suffers from the following severe impairments: degenerative disc disease, osteoarthritis, obesity, diabetes, depression, anxiety, and panic disorder pursuant to 20 C.F.R. § 404.1520(c) and § 416.920(c). R. 13.  The ALJ noted that these medically determinable impairments cause more than minimal limitations to the ability to perform basis work activities. R. 13.  But the ALJ concluded at step three of the analysis that none of Lambert's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 13.

At step four, the ALJ determined that Lambert is unable to perform any past relevant work. R. 21. The VE classified Lambert's past work as follows: (1) data entry, secretary at the exertional light level; (2) babysitter at the exertional medium level; (3) sandwich maker at the exertional medium level; (4) cashier/stocker at the

exertional light level; and (5) secretary, legal at the exertional sedentary level. R. 62.

At step five, the ALJ found that Lambert has the residual functional capacity ("RFC") to perform a limited range of light unskilled work. R. 15. Ultimately, the ALJ determined that considering Lambert's age, education, work experience, and RFC there are jobs that she can perform that exist in significant numbers in the national economy. R. 20. Therefore, the ALJ concluded that Lambert was not disabled within the meaning of the Social Security Act from March 31, 2015 through November 15, 2017. R. 21. Based on these findings, the ALJ denied Lambert's claims. R. 21.

## IV. DISCUSSION

Lambert presents two issues on appeal: (1) whether the ALJ properly evaluated the credibility of Lambert's allegations consistent with the Eleventh Circuit pain standard, and (2) whether the ALJ erred in assigning little weight to the opinion of psychologist June Nichols. Doc. 18 at 14. The court finds both contentions to be without merit.

### A.    The Pain Standard

Lambert asserts that the ALJ's finding that she is not disabled by neck pain, low back pain, and neuropathy pain is not supported by substantial evidence. Doc. 18 at 14. "The ALJ must make credibility determinations regarding a claimant's claims of pain." *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 833 (11th

Cir. 2006). When determining the credibility of a claimant's testimony as to her symptoms, the ALJ must follow a two-step process: "(1) first determine if the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged; and, if so (2) evaluate the intensity and persistence of the claimant's symptoms such as pain and determine the extent to which the claimant's symptoms limit his or her ability to perform work-related activities." *Cooley v. Comm'r of Soc. Sec.*, 2019 WL 211437, at *2 (M.D. Fla. Jan. 16, 2019). "In considering the intensity, persistence, and limiting effects of the claimant's symptoms, the ALJ is to examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *3 (internal citation and quotation omitted).

Additionally, the Social Security Regulations provide that a claimant's subjective complaints of pain cannot alone establish disability. Rather, the regulations describe additional objective evidence that permits a finding of disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. When establishing disability in this manner, a claimant must

satisfy two parts of the Eleventh Circuit's three-part pain standard: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

A claimant's testimony that is supported by medical evidence and satisfies the pain standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). But an ALJ is free to discredit a claimant's testimony. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Crow v. Colvin*, 36 F. Supp. 3d 1255, 1259 (N.D. Ala. 2014) ("Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony."). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.2d at 1255. "The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court." *Carrell v. Berryhill*, 2019 WL 1696698, at *4 (N.D. Ala. Apr. 17, 2019). Otherwise, the testimony will be accepted as true. *Id.* The pain standard requires that the articulated reasons be supported by substantial evidence. *Hale*, 831 F.2d at 1012 ("Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial

evidence.").  In any event, the "question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ articulated reasons for discounting Lambert's pain allegations, and those reasons are supported by substantial evidence.  Despite Lambert's contention to the contrary (Doc. 18 at 14), the ALJ addressed Lambert's subjective testimony.  The ALJ noted that he had "considered the evidence including the claimant's subjective allegations, as well as third-party evidence, and finds the claimant simply alleges a greater degree of debilitation than what the objective medical supports." R. 19.  The ALJ noted that Lambert denied the ability to perform household chores, to cook, to shop, or to play with her grandchildren during the hearing, despite claiming that she could do all of these things in her function report. R. 16.  The ALJ also reasoned that, "[a]lthough the claimant alleges debilitating symptoms throughout the record, the treatment notes show that the claimant sporadically sought treatment, the treatment received was conservative in nature, and the objective medical evidence does not corroborate the severity of symptoms alleged by the claimant." R. 16.  The ALJ further opined that Lambert's "statements concerning the intensity, persistence and limiting effects of these symptoms are not supported by the objective evidence in the record." R. 17.  And the ALJ determined

that the severity of Lambert's impairments could not reasonably be expected to cause the alleged symptoms. R. 18. Although the ALJ may not have specifically mentioned the Eleventh Circuit pain standard in his opinion, he articulated explicit and adequate reasons for discrediting Lambert's testimony. *See also Meredith v. Astrue*, 2011 WL 1878143, at *6 (N.D. Fla. Jan. 24, 2011) ("Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.").

Accordingly, the court must now decide whether the ALJ's reasons were supported by substantial evidence. They were. The ALJ identified several pieces of substantial evidence that support his articulated credibility finding. For example, he noted that Dr. Mina Khan at Primary Care Services determined that a physical examination of Lambert revealed no significant abnormalities. R. 664−65. Dr. Khan did conclude that Lambert suffered from chronic neck and back pain with a history of degenerative disc disease and diabetes mellitus, Dr. Khan found that Lambert had a normal range of motion in her neck, lumbar spine, and in all joints tested in the upper and lower extremities. R. 664−65. Lambert's back revealed no tenderness to palpation over the spine, and a straight leg test was negative. R. 665. Dr. Khan reported that Lambert's neck was soft and supple without masses, adenopathy, thyromegaly, or jugular vein distention. R. 664. Dr. Khan did not note any erythema, warmth, swelling, or joint deformities, but did observe some crepitus in the right

knee even though Lambert could squat without difficulty. R. 665. Lambert's gait was normal without the use of assistive devices. R. 665.

The record also revealed that Lambert responds well to massage therapy and electrical stimulation. On August 4, 2016, Lambert went to visit Dr. Diana J. Hudgins about her back pain. R. 807. Lambert reported her pain was at a level six on a scale of one to ten. R. 807. Lambert told Hudgins that the pain was relieved by laying down and taking medication. R. 807. Hudgins decided to try massage therapy performed for five minutes on Lambert's full spine. R. 807. Lambert responded well to the treatment. R. 807. Hudgins recommended that Lambert return twice per week for two weeks for massage therapy. R. 807. The next day Lambert returned and reported that her pain had decreased to level five. R. 809. Lambert again responded well to massage therapy and Hudgins recorded that Lambert had improved since her last visit. R. 809. Hudgins decided to continue with that treatment plan. R. 809. On August 9th, Lambert's pain had decreased to level four and her symptoms of discomfort had generally been better. R. 810. On August 17, 2016, Lambert's condition had improved even more with her pain now registering level three. R. 811. Hudgins also decided to try electrical stimulation in the spine, paraspinal tissues, and lumbar area. R. 811. Hudgins recorded that Lambert responded well to the treatment, and she continued to recommend that Lambert return twice per week. R. 811. By April 12, 2017, Lambert's pain level had decreased to level one. R 812.

Hudgins recommended that Lambert continue to return twice per week. R. 812. On May 11, 2017, Lambert told Hudgins that her lumbar discomfort had increased to level eight. R. 814. However, there are no records indicating that Lambert returned for treatment between April 12 and May 11, as recommended by her doctor. Furthermore, Lambert again responded well to massage therapy performed for five minutes. R. 814.

Records from the Sand Mountain Family Practice also support the ALJ's decision. At Sand Mountain, Lambert reported that she sometimes walked for exercise. R. 792. Doctors recorded that Lambert's knee pain and edema were controlled with medication. R. 734. Her head and neck were found to be supple, atraumatic, and in normal position. R. 737. Dr. John Belyeu repeatedly determined that Lambert had full range of motion in her head and neck. R. 480, 483, 488 & 490.

Some of the information provided by Lambert and her family further supports the ALJ's conclusion. On her function report, Lambert indicated that she can do laundry, wash and put up dishes, dust, and pick up paper and trash thrown in the yard. R. 297. She indicated that she is able to watch over her grandchildren and take them to the park one or two days per week, although she can no longer pick them up. R. 299. On her function report, Lambert's daughter-in-law did not indicate that Lambert has a problem with sitting and she also reported that Lambert can walk for about 20 minutes without needing a rest. R. 292. In summation, the court finds that

substantial evidence supports the ALJ's reasons for discrediting Lambert's pain allegations. *See Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

**B.    The Opinion of Dr. Nichols**

Lambert argues that the ALJ's decision to assign little weight to Dr. Nichols' opinion is not supported by substantial evidence. Doc. 18 at 14.    "In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)).    The opinions of examining physicians are given more weight than those of non-examining physicians, and the opinions of treating physicians are given substantial weight unless the ALJ shows good cause for not doing so. *See id.*    "The opinions of non-examining, non-reviewing physicians are entitled to little weight when contrary to those of an examining physician, and taken alone, they do not constitute substantial evidence." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 901 (11th Cir. 2012).

The Eleventh Circuit has "articulated [its] own standard for reviewing the opinions of agency-appointed consulting physicians." *Jackson v. Soc. Sec. Admin.,*

*Comm'r*, 779 F. App'x 681, 685 (11th Cir. July 29, 2019). In the Eleventh Circuit, "the opinion of a physician who examined a claimant on only one occasion is not entitled to great weight." *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

In any event, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). This is because the "ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition." *Smith v. Astrue*, 641 F. Supp. 2d 1229, 1233 (N.D. Ala. 2009). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. *Id.* (internal citation omitted). The court cannot affirm the ALJ's decision "simply because some rationale might have supported the ALJ's conclusion." *Winschel*, 631 F.3d at 1179 (internal citation omitted). However, "the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007); *see also Harris v. Astrue*, 546 F. Supp. 2d 1267, 1281 (N.D. Fla. 2008) ("The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability

to work is reserved to the Commissioner.").

Here, it was appropriate for the ALJ to assign Dr. Nichols' opinion little weight. To begin with, Nichols' opinion was not entitled to great weight because she was an agency-appointed consultant who examined the claimant only once. *See Jackson*, 779 F. App'x at 684 ("The opinion of a physician who examined a claimant on only one occasion, however, is not entitled to great weight."). The ALJ also articulated reasons for assigning Nichols' opinion little weight. *See Winschel*, 631 F.3d at 1179 (holding that the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor). The ALJ assigned little weight to Nichols' opinion because (1) Lambert provided Nichols with inaccurate information regarding her employment and (2) Nichols' opinion was inconsistent with the record as a whole. R. 18. These reasons are supported by substantial evidence.

Nichols diagnosed Lambert with major depressive disorder that is recurrent and severe and panic disorder without agoraphobia. R. 670. She found that Lambert suffered from symptoms of severe depression and anxiety, and that her anxiety and panic attacks markedly affected her concentration, persistence, or pace. R. 671. Nichols opined that Lambert fell in the low average range of intellectual ability. R. 670. She reported that Lambert's memory was grossly intact but that her ability to relate interpersonally and withstand the pressures of work was compromised.

R. 670−71.  Nichols assigned Lambert a GAF score of 50 (R. 671), which indicates severe impairments. *See McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006).

During the examination, Lambert told Nichols about her work at Subway and Michael Grocery. R. 669.  She told Nichols that she had to quit Subway because she was not able to remember the ingredients for the sandwiches when she noticed that customers were waiting on her. R. 669.  Lambert said she had to quit Michael Grocery due to complications with her lap band surgery. R. 669.  She did not mention to Nichols that she was currently employed as a babysitter or that various people paid her to run their errands.  She also did not tell Nichols about her employment at Murphy's Oil.

To support her claim of disability, Lambert submitted records from the Sand Mountain Family Practice, where she obtained both physical and mental health treatment.  On July 11, 2011, the examining doctor noted that Lambert's mental status was alert and oriented, and she was able to articulate well with normal speech/language, rate, volume, and coherence. R. 493.  She showed no signs of suicidal ideation. R. 493.  The doctor noted that she had experienced insomnia in the past. R. 493.  On December 13, 2011, Lambert was prescribed Restoril for her insomnia. R. 485.  On January 11, 2012, Lambert returned to Sand Mountain, where the Lambert reported frequent crying. R. 483.  On the day of the exam, however, she

had appropriate mood, affect, and orientation. R. 484. She also was able to articulate well with normal speech/language, rate, volume, and coherence. R. 484. The examining doctor prescribed Cymbalta for her depression. R. 484. She returned the next month due to mouth ulcers. R. 479. Lambert also asked to try a different medication because the Cymbalta was causing constipation and her blood sugar to increase, which negatively affected her diabetes. R. 479. The doctor reported that her mental status was normal. R. 481. The doctor did not refill her Cymbalta but did not prescribe anything else for depression, and he prescribed her a different medicine for insomnia. R. 479–481.

On March 30, 2012, a doctor as Sand Mountain prescribed Viibyrd for Lambert. R. 478. She was supposed to return for an appointment in two weeks (R. 478), but there are no records indicating that she did so. Lambert returned on May 10, 2012 and complained that her depression had worsened. R. 474. She described her depression as feeling blue, nervous, and tired. R. 474. She could not afford Viibyrd, so the doctor noted that she needed a generic version of the drug. R. 474. Ambien was helping her sleep. R. 474. Apart from her depression and insomnia, the doctor again noted that her mental status was alert and normal. R. 475–76. The doctor gave her Celexa. R. 473. However, on the first of June, Lambert reported that the Celexa was not helping her to manage stress. R. 470. The doctor kept her on Celexa, but also prescribed Trazadone for depression and Xanax for anxiety.

R. 472.

When she returned to Sand Mountain in August 2012, Lambert reported that she had experienced a persistent pattern of depression over the past two weeks. R. 466. The doctor decided to try new medications. R. 468. He reported that her mental status was normal and alert. R. 467–68. On September 6, 2012, Lambert told the physician that she continued to struggle with depression, and the doctor noted that she was out of work as a result of her depression. R. 463. But some of the new medications had helped to alleviate her crying spells, and her insomnia had ceased. R. 463−64. The doctor confirmed that she showed improvement even though her depression was not ideally controlled. R. 465. During a follow up visit on September 25, 2012, Lambert reported that she could not tell whether the medication was helping her in any significant way. R. 460. The doctor doubled her dose of Trazadone. R. 462. On October 19, 2012, Lambert told the doctor that she was still unable to return to work due to depression. R. 457. The doctor kept her on Trazadone and gave her sample starter packs of Viibyrd because Lambert still did not have insurance and was concerned about paying for the medication. R. 457 & 459.

There are no other records concerning Lamberts' mental health treatment at Sand Mountain until May 21, 2013. Lambert returned to Sand Mountain on that date complaining of a knee injury and edema in her legs. R. 645. She did not complain about depression. The doctor noted that both her anxiety and insomnia

were controlled by Xanax and Zolpidem, respectively. R. 648. The doctor further recorded that she was alert, oriented, and cooperative. R. 647. On October 16, 2013, Lambert returned to Sand Mountain complaining of hypertension and neck pain. R. 640. During the examination, the doctor recorded that Lambert's mental status was alert (R. 642), and she had a normal attention span and ability to concentrate. R. 643. He found that her depression was controlled with Xanax and her insomnia was controlled with Zolpidem. R. 643. When Lambert returned on February 5, 2014 with a cough, the doctor recorded that her depression and insomnia were still controlled by medication. R. 638. Then, in June 2014, while treating Lambert for complaints related to her diabetes and hypertension, the doctor at Sand Mountain noted that her anxiety and insomnia were controlled. R. 632. He concluded that her mental status was alert and normal, her attention span was normal, and she had the ability to concentrate. R. 630−31. Upon a mental status exam, he determined that she was oriented with appropriate mood, affect, and speech. R. 631. A trip to the doctor on October 22, 2014 for sinus pain revealed the same findings concerning Lambert's mental health, as did another visit on January 23, 2015. R. 620−27. Lambert returned for neck pain and hypertension on April 21, 2015, and the doctor found that medication was still controlling her anxiety and insomnia. R. 615 & 618.

Lambert also received treatment from the Mental Health Center ("MHC") for anxiety and depression. She submitted records from 2016 through March 2017.

However, she indicated that she had received treatment from MHC in the past but had to stop due to transportation problems. R. 678.  During a visit on February 1, 2016, Lambert reported that she had struggled with depression for fifteen years and had attempted suicide twice. R. 694.  She also sought help for insomnia and trouble sleeping. R. 691 & 694.

During her treatment at MHC, Lambert received a referral to the substance abuse division at the Alabama Department of Mental Health for drug screening. There, Lambert was assigned a GAF score of 53. R. 706. The therapist who evaluated her noted that she had past issues with depression and anxiety. R. 705. The therapist also diagnosed Lambert with major depression, recurrent and severe, and recommended that Lambert see a therapist and psychiatrist. R. 706.  On January 9, 2017, Lambert reported an increase in depression with anxious feelings, but she denied any suicidal ideation. R. 680 & 691.  Her mood was dysphoric. R. 680.  The therapist indicated that her appearance, affect, and orientation were normal. R. 680.

On February 24, 2017, MHC professionals noted that Lambert's affect was normal and her gross memory was intact, but that her concentration was diminished and attention span fair. R. 679.  Lambert was prescribed Trazadone and Celexa for her depression, instructed to stop using Tylenol PM, and referred to a psychotherapist. R. 679.  On March 9, 2017, Lambert reported that she was taking her medications and that she was sleeping a little better. R. 677.  A therapist

discussed ways to build her self-esteem and other coping skills. R. 677.  Although her mood was dysphoric and tearful, the therapist reported that her appearance, affect, and orientation were normal. R. 677.

State agency consultant Dr. Robert Estock examined Lambert's records and issued an opinion that she was not disabled. R. 113.  Dr. Estock found that Lambert's depression and anxiety imposed mild restrictions on daily living and moderate difficulties in maintaining social functioning, concentration, persistence, and pace. R. 91.  Dr. Estock determined that Lambert was not significantly limited in making simple work-related instructions, but that she was moderately limited in the ability to complete a normal workday and workweek without interruption from depression and anxiety symptoms. R. 111.  However, he determined that she could tolerate ordinary work pressures, would be able to carry out simple instructions, and could attend and concentrate for two-hour periods. R. 111.

These records reveal that Lambert's depression and anxiety can be controlled with medication and do not necessarily prevent her from working.  For example, after experimenting with different medications at Sand Mountain in 2011 and 2012, Lambert reported on September 6, 2012 that medication had reduced her crying spells and stopped her insomnia. R. 463−64.  She did not return to Sand Mountain between October 2012 and May 2013.  When she did return, she did not complain about depression and the doctor noted that both her anxiety and insomnia were

controlled by mediation. R. 648. In 2014, doctors at MHC found that Lambert's depression, insomnia, and anxiety continued to be controlled by medication. R. 632 & 638. In January 2015 and April 2015, around the time of her March 2015 disability onset date, Lambert's mental health problems were still controlled by medication. R. 615, 618 & 620−27. Although her concentration and attention span were found to be diminished in February 2017 after she began taking Trazadone and Celexa for her depression, Lambert reported that she was doing better by March 2017. R. 677 & 679. Moreover, Dr. Nichols' ability to make reliable findings about Lambert's work-related abilities was hampered by the fact that Lambert failed to inform Nichols that she was working at the time. Additionally, Dr. Nichols' opinion is contradicted by Dr. Estock, who determined that Lambert could tolerate ordinary work pressures, would be able to carry out simple instructions, and could attend and concentrate for two-hour periods. R. 111. The court therefore concludes that the ALJ's decision to assign Nichols' opinion little weight is supported by substantial evidence. Accordingly, the Commissioner's decision is due to be affirmed.

## V. CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE and ORDERED on February 4, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE